# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 23, 2024

Lyle W. Cayce
Clerk

No. 23-50562

RESTAURANT LAW CENTER; TEXAS RESTAURANT ASSOCIATION,

*Plaintiffs—Appellants*,

*versus*

UNITED STATES DEPARTMENT OF LABOR; JULIE A. SU, *Acting Secretary, U.S. Department of Labor*; JESSICA LOOMAN, *Acting Administrator of the Department of Labor's Wage and Hour Division, in her official capacity*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-1106

---

Before ELROD and GRAVES, *Circuit Judges*, and ASHE, *District Judge*.[*]
JENNIFER WALKER ELROD, *Circuit Judge*:

The Restaurant Law Center and the Texas Restaurant Association challenge a final rule promulgated by the Department of Labor that restricts when employers may claim a "tip credit" for "tipped employees" under the

---

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

Fair Labor Standards Act. The Administrative Procedure Act requires us to hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Final Rule fails under the Administrative Procedure Act twice over. Because the Final Rule is contrary to the Fair Labor Standards Act's clear statutory text, it is not in accordance with law. And because it imposes a line-drawing regime that Congress did not countenance, it is arbitrary and capricious.

## I

## A

The Fair Labor Standards Act permits employers to take what is commonly called a "tip credit" when paying the wages of any "tipped employee." 29 U.S.C. § 203(m)(2)(A). The tip credit enables the employer to pay tipped employees $2.13 per hour—significantly below the current minimum wage of $7.25 per hour—under the theory that a large portion of such employees' total earnings comes from tips. The FLSA still requires that an employee's tips make up the difference between the $2.13 wage and the general minimum wage. If that difference does not end up being covered by tips, then the employer must pay the remainder to ensure that the tipped employee makes at least the minimum wage. 29 U.S.C. § 203(m); *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015).

The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

"DOL is authorized to promulgate rules interpreting and clarifying the FLSA." *Montano*, 800 F.3d at 190. The tip credit has long been the subject of interpretation by DOL. In 1967, the year after Congress amended the FLSA to include the tip credit, DOL issued its "dual-jobs" regulation,

which addressed situations where an employee regularly engages in distinct occupations for the same employer. For example, "where a maintenance man in a hotel also serves as a waiter," that employee "is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations." 29 C.F.R. § 531.56(e) (1967–2021). The regulation contrasted this example with that of "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses." For the latter employee, "[s]uch related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." *Id.*

Presumably concerned that employers might, as the district court put it, exploit the tip credit to "subsidize non-tipped work and pay employees less across the board," DOL issued several opinion letters from 1979 to 1985 interpreting the dual-jobs regulation to more significantly restrict the tip credit's availability. In 1988, DOL published its so-called 80/20 guidance in its sub-regulatory Field Operations Handbook. 86 Fed. Reg. 60,114, 60,116. The 80/20 guidance provided that a maximum of 20 percent of an employee's time could be spent on non-tipped activities related to the tipped occupation—for example, a waitress setting tables or making coffee—for the employer to claim the full tip credit.

DOL's 80/20 guidance persisted uninterrupted until 2009, when DOL's interpretation of the dual-jobs regulation began to oscillate with every change in presidential administration. First, in early 2009, a DOL opinion letter briefly rescinded the guidance. This opinion letter, in turn, was quickly withdrawn in the early days of the Obama Administration. *See* 86 Fed. Reg. 60,114, 60,117. Then, in 2018, the Trump Administration reissued the 2009 opinion letter, thereby doing away with the 80/20 guidance once again. And in 2020, DOL issued a final rule set to take effect in March 2021 that would have amended 29 C.F.R. § 531.56(e). This rule would have permitted

employers to claim the tip credit for all non-tipped duties that its tipped employees performed, so long as those duties were related to the employee's tipped occupation and were performed reasonably contemporaneously with tipped duties. 85 Fed. Reg. 86,756, 86,767. But the rule never took effect.

Instead, another change in presidential administration swept in another change in DOL policy. In December 2021, DOL issued a different final rule after notice and comment that effectively codified its longstanding 80/20 guidance. The Final Rule added a new subsection (f) to 29 C.F.R. § 531.56, explaining what it means to be "engaged in a tipped occupation" under 29 U.S.C. § 203(t). Notably, "tipped occupation" is not a term used in § 203(t) of the FLSA. According to the Final Rule, an employee is "engaged in a tipped occupation when the employee performs work that is part of the tipped occupation." 29 C.F.R. § 531.56(f) (2021). Therefore, "[a]n employer may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation." *Id.*

The Final Rule then proceeds to define three categories of work: (1) directly tip-producing work (e.g., a server "providing table service"); (2) directly supporting work (e.g., a server "setting and bussing tables"); and (3) work not part of the tipped occupation (e.g., a server "preparing food"). *Id.* An employer may take the tip credit for tip-producing work. But if more than 20 percent of an employee's workweek is spent on directly supporting work, the employer cannot claim the tip credit for that excess. Nor can directly supporting work be performed for more than 30 minutes at any given time.[1] An employer may not take the tip credit for any time spent on work not part of the tipped occupation. In addition, the Final Rule amended the 1967 dual-

---

[1] The 30-minute requirement is new to the Final Rule and has no analog in DOL's previous 80/20 guidance.

jobs regulation to omit the counterexample of a waitress engaging in duties related to her occupation. *Compare* 29 C.F.R. § 531.56(e) (2021) *with id.* (1967–2021).

The Restaurant Law Center and the Texas Restaurant Association filed this lawsuit in December 2021 in the Western District of Texas, seeking to permanently enjoin DOL's enforcement of the Final Rule. The Associations moved for a preliminary injunction, which the district court denied on the ground that the Associations would not suffer irreparable harm. On appeal, this court reversed and remanded, holding that the Associations had sufficiently shown irreparable harm, and instructed the district court to consider the other prongs of the preliminary injunction analysis. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 600 (5th Cir. 2023).

On remand, the district court considered and entered final judgment on both the motion for a preliminary injunction and on two dueling motions for summary judgment that the parties had filed while the appeal was pending. The court evaluated the merits of the Associations' claims, relevant to resolving all three motions, in a single order. Concluding that the Final Rule was a permissible interpretation of an ambiguous statutory term—"engaged in an occupation"—the district court held that DOL's interpretation was entitled to deference under *Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). In addition, the district court held that the Final Rule was neither arbitrary nor capricious, and was not subject to the major questions doctrine as expounded by the Supreme Court in *West Virginia v. EPA*, 597 U.S. 697 (2022). The district court therefore denied the Associations' motions for a preliminary injunction and summary judgment and granted DOL's motion for summary judgment.

The Associations timely appealed, challenging only the district court's summary judgment rulings. Shortly following oral argument in this

case, the Supreme Court overruled *Chevron*, instructing that courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

## B

Before turning to the merits of this case, it is helpful to survey several opinions from our sister circuits that figure prominently in both parties' arguments here. While we appear to be the first circuit court to confront the permissibility of the Final Rule under the FLSA, several other circuits have previously examined DOL's preexisting guidance upon which the Final Rule is modeled.

Most notably, the parties direct our attention to the *en banc* Ninth Circuit's opinion in *Marsh v. J. Alexander's LLC*, 905 F.3d 610 (9th Cir. 2018) (en banc). In that case, a server filed a lawsuit against his former employer, claiming that he was entitled to the full minimum wage for time spent on untipped work under the FLSA, the dual-jobs regulation, and DOL's subsequent sub-regulatory guidance. *Id.* at 615–17. The Ninth Circuit agreed that the server had adequately stated a claim for relief, holding that: (1) the FLSA's tip-credit provision was ambiguous and the dual-jobs regulation was a permissible construction of the provision under *Chevron*; and (2) the dual-jobs regulation was itself ambiguous and DOL's subsequent sub-regulatory guidance was a permissible construction of the regulation under *Auer v. Robbins*, 519 U.S. 452, 461 (1997). *Marsh*, 905 F.3d at 621–23, 625–32.

Judge Graber concurred in part and dissented in part. She wrote that DOL's guidance, at least as it related to a 20 percent cap on "related but non-tipped work" should not have received *Auer* deference. *Id.* at 634 (Graber, J., concurring in part and dissenting in part). She pointed out that the dual-jobs regulation asks "whether the employee performs tasks *unrelated* to his

or her tipped occupation" and has "nothing to do with the *amount of time* that an employee spends engaged in non-tipped tasks *related* to the tipped occupation." *Id.* at 635. Therefore, a server performing untipped tasks related to her occupation as a server is "*not performing two jobs*" under the dual-jobs regulation. *Id.* at 635–36.

Judge Ikuta, joined by Judge Callahan, dissented. She likewise would not have applied *Auer* deference to DOL's sub-regulatory guidance, which she called a "purely . . . legislative rule," rather than an interpretive rule, which then should have been issued through notice-and-comment rulemaking. *Id.* at 648 (Ikuta, J., dissenting). The 20-percent cap on non-tipped work, she wrote, "effectively disregards" the dual-jobs regulation's delineation between an employee employed in two distinct jobs and one employed in a single job performing a range of tasks. *Id.* at 645. "There is no job that can be described as more-than-20-percent-of-time-spent-on-untipped-related-tasks, nor is there a job that can be described as the five or ten minutes spent here and there on unrelated tasks." *Id.* And while not directly opining on the permissibility of the sub-regulatory guidance under the FLSA itself, Judge Ikuta noted that the guidance "eviscerates the statutory tip credit" and "eliminates the benefit conferred on employers by Congress." *Id.* at 649, 652.

The Ninth Circuit's *Marsh* opinion followed the Eighth Circuit's earlier opinion in *Fast v. Applebee's International, Inc.*, which likewise held that DOL's sub-regulatory guidance was entitled to *Auer* deference, and that it was a permissible interpretation of the dual-jobs regulation. 638 F.3d 872, 872–80 (8th Cir. 2011).

Finally, in *Rafferty v. Denny's, Inc.*, the Eleventh Circuit examined the Trump Administration's 2018 sub-regulatory guidance, which had rescinded the 80/20 guidance. 13 F.4th 1166, 1179–80 (11th Cir. 2021). The court

declined to extend *Auer* deference to the 2018 guidance, concluding that although the dual-jobs regulation was ambiguous, the 2018 guidance was not a reasonable interpretation of the regulation. *Id.* at 1185.

Judge Luck concurred in the result. He agreed with the majority that the 2018 guidance was not entitled to deference, but he would have directed the district court to "apply the *unambiguous* text of the dual jobs regulation instead of the Department of Labor's opinion letters purporting to interpret the regulation." *Id.* at 1195 (Luck, J., concurring in the result). The dual-jobs regulation states that tipped employees may "occasionally" perform non-tipped duties. *Id.* at 1200 (quoting 29 C.F.R. § 531.56(e)). This term, Judge Luck observed, has a "plain and ordinary meaning[]." *Id.* It simply means that non-tipped duties "can't take up most of the employee's time": "'occasionally' doesn't mean ten or twenty percent or any other specific percent." *Id.* at 1201.

Because none of these opinions addressed the validity of the Final Rule as an interpretation of the FLSA, they do not directly bear upon the question that we are confronted with here. Nonetheless, they show that courts have long been wrangling with the tip credit and DOL's regulation thereof. And they can be helpful in illuminating the best reading of the FLSA.

## II

We review a district court's ruling on a motion for summary judgment *de novo*. *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 233 (5th Cir. 2019). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When cross-motions for summary judgment have been ruled upon, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *W & T*, 946 F.3d at 233 (citation and internal quotation marks omitted).

No. 23-50562

Here, we are tasked with evaluating the permissibility of the 2021 Final Rule under the FLSA. The APA directs courts to hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

III

A

In conducting review of an agency's action under the APA, the "court shall decide all relevant questions of law" and "interpret . . . statutory provisions." *Id.* § 706. "The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Loper Bright*, 144 S. Ct. at 2261.

Our task was once different under the now-*ancien régime* that *Chevron* imposed. Under *Chevron*, a court reviewing agency action for compliance with the relevant statute had to defer to "permissible" agency interpretations, "even if not 'the reading the court would have reached if the question initially had arisen in a judicial proceeding.'" *Id.* at 2264 (quoting *Chevron*, 467 U.S. at 843 n.11). The doctrine was often conceptualized as proceeding in three distinct steps. At "Step Zero," the reviewing court determined whether the agency interpretation in question was authoritative. *Ali v. Barr*, 951 F.3d 275, 278–79 (5th Cir. 2020). At "Step One," the court asked whether the statutory provision was unambiguous, in which case any contrary agency interpretation would be disregarded. *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 963 (5th Cir. 2023) (quoting *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 433 (5th Cir. 2021)).

But if the statute was "silent or ambiguous as to the specific issue," then at "Step Two" the court asked whether the agency's interpretation was "a permissible construction of the statute." *Id.* (quoting *Huawei*

*Technologies*, 2 F.4th at 433).  In short, a court was "obliged to accept the agency's position if Congress ha[d] not previously spoken to the point at issue and the agency's interpretation [was] reasonable."  *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).

The *Chevron* doctrine proved controversial, and many called for it to be reconsidered.  *See, e.g.*, *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149–58 (10th Cir. 2016) (Gorsuch, J., concurring) (critiquing *Chevron* under separation of powers principles and the text of the APA).  But as we were bound to do, we continued to "name *Chevron*, and apply its precedent—until and unless it [was] overruled by our highest Court."  *Mexican Gulf Fishing Co.*, 60 F.4th at 963 n.3.

The Supreme Court has now done so.  "*Chevron* is overruled."  *Loper Bright*, 144 S. Ct. at 2273.  In its place, the Court has instructed that we are to return to the APA's basic textual command: "independently interpret[ing] the statute and effectuat[ing] the will of Congress."  *Id.* at 2263.  Courts are constantly faced with statutory ambiguities and genuinely hard cases.  But "instead of declaring a particular party's reading 'permissible' in such a case, courts use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity."  *Id.* at 2266.

B

Following the Supreme Court's instructions, and without the guidance of *Chevron*, we turn now to our task.  While the district court was of course correct to apply the *Chevron* framework at the time of its decision, the Supreme Court's intervening opinion in *Loper Bright* requires us to depart from the district court's analysis at the very start.  We must parse the text of the FLSA using the traditional tools of statutory interpretation.  As the district court correctly put it, "[t]he dispute in this case turns on the meaning

of the statutory phrase 'engaged in an occupation' and the term 'occupation,' both of which are used in the definition of 'tipped employee' but are undefined in the FLSA."

"As usual, we start with the statutory text." *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020). Terms that the statute leaves undefined should be given their "ordinary, contemporary, common meaning." *Contender Farms, LLP v. U.S. Dep't of Agric.*, 779 F.3d 258, 269 (quoting *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003)). Section 203(t)'s text is simple. A "tipped employee" means "any employee *engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (emphasis added).

Because the FLSA defines neither "engaged in" nor "occupation," the ordinary meaning of these terms in 1966, when the tip credit was added to the FLSA, controls. *See Contender Farms*, 779 F.3d at 269. We turn first to contemporary dictionary definitions. *See Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566–69 (2012).

Start with the word "engaged." Several cited contemporary dictionaries define it as: (1) "occupied; employed";[2] (2) "busy or occupied; involved";[3] and (3) "to employ or involve oneself."[4]

And as for "occupation," those same dictionaries define that term as: (1) "the principal business of one's life: a craft, trade, profession, or other means of earning a living: employment; vocation <his occupation is

---

[2] 1 Webster's Third New International Dictionary 751 (1961 ed.).

[3] The Random House Dictionary of the English Language 473 (1967 ed.).

[4] *Engage*, Black's Law Dictionary 622 (4th ed. 1957).

No. 23-50562

farming>";[5] (2) "one's usual or principal work or business, esp. as a means of earning a living: *His occupation was dentistry*";[6] and (3) "Vocation. That which principally takes up one's time, thought, and energies; especially, one's regular business or employment; also whatever one follows as the means of making a livelihood."[7]

The Associations are correct that "engaged in an occupation" most naturally indicates a focus "on the field of work and the job as a whole," rather than on specific tasks. In other words, "engaged in an occupation" closely resembles "employed in a job."[8]

––––––––––––––––––––––––

[5] 2 Webster's Third New International Dictionary, *supra* note 2, at 1560. While at least one esteemed jurist might have looked askance at the use of Webster's Third, *MCI Telecomms. Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 225–28, 228 n.3 (1994), we cite this contemporaneous edition here for completeness. In any event, the definitions that Webster's Third offers for both "engaged" and "occupation" did not significantly change from previous editions. *See* Webster's Second New International Dictionary 847 (1958 ed.) (defining "engaged" as "occupied; employed"); *id.* at 1684 (defining occupation as "[t]hat which occupies, or engages, the time and attention; the principal business of one's life; vocation; business").

[6] The Random House Dictionary of the English Language, *supra* note 3, at 996.

[7] *Occupation*, Black's Law Dictionary, *supra* note 4, at 1230.

[8] There is no other fair way to read these terms in the context of § 203(t). To read "occupation" as meaning something closer to "activity" or "duty" would lead to curious results. It would necessarily mean that § 203(t)'s $30-per-month threshold would apply separately to every discrete genre of duty that an employee may perform, rather than simply to that employee's job as a whole. A server's employer would need to determine when the server had crossed that threshold and earned $30 in tips for, to name a few examples, taking orders, delivering food, folding silverware into napkins, and singing "Happy Birthday" to patrons. Putting aside the obvious line-drawing problem, giving tips to an employee based on each individual activity that the employee performs is simply not how tipping works in practice. One occupation, one $30-per-month requirement. That § 203(t)'s use of the term "occupation" refers to individual discrete activities, rather than to the job as a whole is, we think, highly unlikely.

No. 23-50562

But this conclusion does not alone resolve the question. Indeed, DOL appears to fully acknowledge that "occupation" must refer to the entire job. Rather, DOL points out that an employee is not truly "engaged in" his occupation (or job) if he is not performing the customary duties associated with that occupation. In other words, DOL shifts the focus from "occupation" to "engaged in." From there, DOL further argues that "engaged in" must have some nexus to whether an employee's duties relate to the pursuit of tips—the characteristic with which Congress was supposedly concerned.

While initially plausible, DOL's argument rests on an ambiguity of its own making. Section 203(t) is silent, DOL maintains, as to when an employee is truly engaged in her occupation. The FLSA, the argument goes, therefore confers on DOL the authority to make that determination by reference to whether an employee is in any given moment pursuing tips (or, with a small allowance, directly supporting that pursuit). We cannot agree.

At the threshold, and as explained above, "engaged in" means, *inter alia*, "employed." DOL does not address this fact, taking for granted that to be "engaged in an occupation" must mean something more granular than simply to be "employed in a job." We do not see why we should depart from the more natural interpretation. Regardless, the logical knots into which DOL invites us to tie ourselves further confirms that its interpretation is not the best reading of the statute.

DOL's interpretation sits uncomfortably with the operative statutory term: "tipped employee." Under the Final Rule, if an employee is not engaged in her occupation at a given moment, then she is not a "tipped employee" at that moment. The Final Rule necessarily means, therefore, that when an employee is not engaged in her "tipped occupation," as the regulatory language puts it, she is engaged in some *other* occupation. Because

the Final Rule is so granular in divvying up component tasks, a single occupation could quickly break apart, implausibly, into many.

As Judge Ikuta put it in *Marsh*:

> [A] waitress doing typical waitress duties remains a waitress, even if (in five-minute increments throughout her workweek) she spends 60 percent of her time waiting tables, 10 percent cleaning tables, 10 percent toasting bread, 10 percent making coffee, and 10 percent washing dishes. The dual jobs regulation—and common sense—tells us that the waitress is 100 percent engaged in the single tipped occupation of waitressing—she is not 60 percent a waitress, 10 percent a janitor, 10 percent a baker, 10 percent a barrista [sic], and 10 percent a dishwasher.

905 F.3d at 645 (Ikuta, J., dissenting) (citation omitted). Although *Marsh* examined the validity of DOL's sub-regulatory guidance rather than that of the Final Rule, these observations remain the same. And this conceptual difficulty with the 80/20 guidance is even further exacerbated by the Final Rule's additional 30-minute requirement. At minute 31, a server who has been "setting and bussing tables" is no longer engaged in her tipped occupation even though the *duty itself* has not changed. 29 C.F.R. § 531.56(f)(3)(ii) (describing setting tables as a server's "directly supporting work"). But "the term 'occupation' does not mean how often a person performs a task." *Marsh*, 905 F.3d at 646 (Ikuta, J., dissenting).

This problem is especially driven home by the Final Rule's treatment of idle time. Time that a server spends idle during a slow shift, for example, is defined as directly supporting work subject to the 20-percent and 30-minute limits. 29 C.F.R. § 531.56(f)(3)(i); 86 Fed. Reg. 60,114, 60,130. Therefore, if the server is idly standing by to serve customers for 21 percent of his workweek, or for 31 continuous minutes, he is no longer engaged in his occupation and is no longer a tipped employee for the duration of that excess

time. What occupation, then, would he be engaged in? The Final Rule creates a paradox that is not obviously capable of resolution.

The Final Rule is attempting to answer a question that DOL itself, not the FLSA, has posed. The FLSA is clear: an employer may claim the tip credit for any employee who, when "engaged in" her given "occupation . . . customarily and regularly receives *more than $30 a month in tips*." 29 U.S.C. § 203(t) (emphasis added). The FLSA does not ask whether duties composing that given occupation are themselves each *individually* tip-producing.

Put another way, being "engaged in an occupation in which [the employee] customarily and regularly receives more than $30 a month in tips" cannot be twisted to mean being "engaged in duties that directly produce tips, or in duties that directly support such tip-producing duties (but only if those supporting duties have not already made up 20 percent of the work week and have not been occurring for 30 consecutive minutes) and not engaged in duties that do not produce tips."

We do not agree with DOL that our interpretation threatens to read "engaged in" out of the statute. This is because "engaged in" still performs the work of identifying the occupation in which an employee receives tips. It therefore clarifies that the tip credit applies to occupations, rather than, for example, to the entire employment relationship even where the employee performs the work of two or more occupations. To put a finer point on it, we do not hold that § 203(t) can be read as: "'tipped employee' means any employee who customarily and regularly receives more than $30 a month in tips."

Indeed, it is DOL's interpretation that threatens to turn the $30-threshold requirement into a nullity by focusing instead on individual tasks. DOL's interpretation functionally turns § 203(t) into: "'tipped employee'

means any employee who, in a given moment, is engaged in tip-producing work." We conclude that our interpretation of the statutory language is the best one because it gives full effect to the entirety of the provision.

We pause to note that, even in the absence of *Chevron*, courts are well-advised to consider agency "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time." *Loper Bright*, 144 S. Ct. at 2262. As DOL points out, the 80/20 standard (but not the 30-minute requirement) is indeed of some vintage, having been applied with brief interregna since at least 1988. But while longstanding agency practice might have the "power to persuade," it has never had the "power to control." *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Nor can we permit agency practice to "defeat a statute's text by 'adverse possession.'" *Airlines for Am. v. Dep't of Transp.*, No. 24-60231, 2024 WL 3580314, at *3 (5th Cir. July 29, 2024) (quoting *Rapanos v. United States*, 547 U.S. 715, 752 (2006)). We are not persuaded that the 80/20 standard, however longstanding, can defeat the FLSA's plain text.[9]

As a final point, in no way does our holding bear on the validity of the dual-jobs regulation, which is not challenged here. The dual-jobs regulation, unlike the Final Rule, does not countenance a percentage-based—much less a 30-minute-increment-cutoff-based—approach to identifying how much untipped work is too much. *See Rafferty*, 13 F.4th at 1201 (Luck, J.,

---

[9] The Associations also urge that we apply the major questions doctrine, which requires agencies to point to "clear congressional authorization" for actions of major "economic and political significance." *West Virginia v. EPA*, 597 U.S. at 721, 724 (citations and internal quotation marks omitted). There is some uncertainty over whether we should apply this doctrine as a substantive clear-statement rule, *see id.* at 740 (Gorsuch, J., concurring), or as a purely linguistic canon of construction, *see Biden v. Nebraska*, 143 S. Ct. 2355, 2376 (2023) (Barrett, J., concurring). We take no position on the major questions doctrine's application here because it is not necessary to our ultimate holding.

concurring in the result). Indeed, it focusses on "whether the employee performs tasks *unrelated* to his or her tipped occupation," not the "*amount of time*" spent on untipped tasks. *See Marsh*, 905 F.3d at 635 (Graber, J., concurring in part and dissenting in part). It therefore suffers from none of the infirmities that we have identified with the Final Rule. "Dual" really means dual. The 1967 regulation envisioned two unrelated and separate occupations: maintenance work and waitressing. 29 C.F.R. § 531.56(e) (1967-2021). By contrast, the Final Rule applies the dual-jobs framework to disaggregate the component tasks of a single occupation.

In summary, the Final Rule applies the tip credit in a manner inconsistent with the FLSA's text. Whatever benefit may result from the Final Rule's "functional" test, we are guided instead by the "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). We must therefore conclude that the Final Rule is "not in accordance with law." 5 U.S.C. § 706(2)(A).

## C

Having concluded that the Final Rule is contrary to the FLSA's text, we could stop here. But the Associations additionally argue that the Final Rule is arbitrary and capricious under the APA. *See* 5 U.S.C. § 706(2)(A). For its part, DOL argues that viewing this dispute as presenting an "arbitrary and capricious question"—rather than a statutory interpretation question—is the better framing. We conclude, for reasons similar to those explained above, that the Final Rule is also arbitrary and capricious.

An agency rule is arbitrary and capricious if:

the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision

No. 23-50562

> that runs counter to the evidence before the agency, or is so
> implausible that it could not be ascribed to a difference in view
> or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Texas v. EPA*, 829 F.3d 405, 425 (5th Cir. 2016). Under the old second step of *Chevron*, a rule could be "arbitrary or capricious in substance," *Judulang v. Holder*, 565 U.S. 42, 53 n.7 (2011) (citation and internal quotation marks omitted), if its implementation of a statute was "not one that Congress would have sanctioned." *Texas v. United States*, 497 F.3d 491, 506 (5th Cir. 2007) (citation and internal quotation marks omitted). Even without *Chevron*, we understand that courts are still to conduct a similar arbitrary-and-capricious analysis in "fix[ing] the boundaries of . . . delegated authority and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Loper Bright*, 144 S. Ct. at 2263 (alteration in original) (citations and internal quotation marks omitted); *accord United States v. Haggar Apparel Co.*, 526 U.S. 380, 392 (1999) ("[A] court may conclude the regulation is inconsistent with the statutory language or is an *unreasonable implementation* of it." (emphasis added)).

DOL's basic premise is that § 203(t) presents a line-drawing problem. Assuming that the provision's use of "engaged in an occupation" refers to engaging in some identifiable set of duties that compose that occupation, there is admittedly the potential for ambiguity. For example, it would be questionable under this conception to say that a mechanically savvy waitress who fixes up her restaurant's refrigerator is in that moment fulfilling a duty of a waitress. If the dual-jobs regulation is permissible under the FLSA, as the parties in large part agree,[10] then there is at least some line drawing that

---

[10] The Associations stated at oral argument that the dual-jobs regulation is "mostly fine."

must occur in identifying which duties make up any given occupation qualifying for the tip credit. DOL argues that the Final Rule's focus on those duties' tip-producing nexus, and on the time an employee spends on supporting duties, is a permissible line to draw.

The Associations counter by reiterating their argument that § 203(t) ties the applicability of the tip credit solely to whether an employee is performing the tasks making up her occupation. The Final Rule's consideration of those duties' relationship to *pursuing tips*, rather than their relationship to the *occupation*, the argument goes, was therefore not a permissible line to draw given § 203(t)'s focus.

We again agree with the Associations. The "line" that DOL has drawn discounts many core duties of an occupation when those duties do not themselves produce tips. This is not what § 203(t) directs DOL to consider. If a core duty of a server is bussing and setting up tables, the server is undoubtedly engaged in his occupation. It does not matter whether he is tipped or not for those duties. DOL must introduce the independent concept of a "tipped occupation." *See* 29 C.F.R. § 531.56(f) ("Engaged in a tipped occupation. An employee is engaged in a tipped occupation when the employee performs work that is part of the tipped occupation."). But that term appears nowhere in the statute.

This leads to strange scenarios where a single employee performing the exact same duty might or might not qualify for the tip credit depending on context. As the Associations point out, under the Final Rule, "a bartender who retrieves a particular beer from the storeroom at the request of a customer sitting at the bar, is performing tip-producing work," yet that same bartender is only performing "directly supporting work" when he "retrieves a case of beer" from the storeroom. 86 Fed. Reg. 60,114, 60,128. "But," the Associations argue, "the bartender in both examples is indisputably

performing the duties of the bartender occupation." We agree. Congress cannot have intended the tip credit to turn on so fine a distinction. It asked only whether the employee is engaged in an occupation in which he receives tips.

Another fundamental problem with the Final Rule is its inconsistent treatment of supporting work based only on the work's duration. We cannot think of any occupation for which every duty is directly tip-producing, as the Final Rule demands. Inevitably, employees in any occupation receiving tips will regularly be tasked with duties that merely support tip-producing work. Servers will set and buss tables. Bartenders will prepare drink mixes. A parking attendant will move patrons' cars around the valet parking garage. The Final Rule ties the tip credit not to the *character* of these various duties as integral to their respective occupations, but to the amount of *time* that these duties take. Like the tipping nexus, this temporality requirement can be found nowhere in the statute.

In short, as to supporting work, the Final Rule replaces the Congressionally chosen touchstone of the tip-credit analysis—the occupation—with one of DOL's making—the timesheet. And as to untipped work, the Final Rule again ignores such work's clear connection to the occupation itself and instead elevates its lack of connection to tipping. The Final Rule is therefore "a completely different approach to the tip credit." *Cf. Marsh*, 905 F.3d at 641 (Ikuta, J., dissenting).

There were other options for DOL to consider that would have been consistent with the statutory tip-credit scheme that Congress enacted. To name just one, DOL itself maintains a database, called O*NET, that provides a "fixed list of duties that tipped employees are required by their employers to perform as part of their work." 86 Fed. Reg. 60,114, 60,127. While DOL was by no means required to use O*NET in implementing the FLSA's tip-

credit scheme, the point is that DOL is not without the tools it needs to hew closer to the FLSA's focus on employees' occupations rather than on their discrete pursuit of tips.

In summary, we hold that the Final Rule is arbitrary and capricious because it draws a line for application of the tip credit based on impermissible considerations and contrary to the statutory scheme enacted by Congress.

## IV

Holding that the Final Rule fails under the APA on two separate and independent grounds, we turn next to the proper remedy. The Associations request both vacatur of the Final Rule and a nationwide injunction against its enforcement.

When an agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the APA directs the reviewing court to "hold unlawful and set aside [that] agency action." 5 U.S.C. § 706(2). In such circumstances, our court's "default rule is that vacatur is the appropriate remedy." *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022); *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 952 (5th Cir. 2024); *Chamber of Com. of the U.S. v. U.S. Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023); *see Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022); *Brown Express, Inc. v. United States*, 607 F.2d 695, 703 (5th Cir. 1979); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."). While remand *without* vacatur might be appropriate in "rare cases," this is not such a case because the Final Rule—which we hold unlawful—suffers from a fundamental substantive defect that the DOL could not rectify on remand. *See Chamber of Com.*, 88 F.4th at 1118 & n.2; *United Steel*, 925 F.3d at 1287.

No. 23-50562

Mindful of the instruction provided by the APA and guided by our court's practice, we conclude that vacatur is the proper remedy.

\*     \*     \*

Accordingly, we REVERSE both the district court's order granting summary judgment to DOL and its order denying summary judgment to the Associations.  We RENDER summary judgment for the Associations and VACATE the Final Rule.